# UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

## No. 25-30241

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

DERRICK LONG,

Defendant-Appellant

Appeal from the United States District Court for the
Western District of Louisiana

3:23-CR-173-5

_____

**BRIEF OF APPELLANT DERRICK LONG**

_____

Submitted by:

C. Mignonne Griffing
116 Londonderry Square
Lafayette, LA 70508
CMGriffing_Law@icloud.com

Attorney for Appellant

## CERTIFICATE OF INTERESTED PERSONS

Undersigned counsel certifies that the following listed persons and entities as described in the fourth sentence of <u>5th Cir. Rule 28.2.1</u> have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal:

1. Derrick Long - appellant

2. Carol Mignonne Griffing - appellate counsel for appellant

3. Mary E. Winchell, Winchell Law Firm - district court counsel for appellant

4. John Aaron Crawford - Assistant United States Attorney

5. Samuel Scott Crichton - Assistant United States Attorney

6. Camille Domingue - Assistant United States Attorney

s/C. Mignonne Griffing
Counsel for Derrick Long

ii

**STATEMENT REGARDING ORAL ARGUMENT**

Mr. Long respectfully requests oral argument. The government violated *Brady/Giglio* by suppressing significant evidence that could have been utilized to impeach its confidential informant, who was the only one who directly implicated Mr. Long as the seller in the substantive-count drug transaction. When the district court denied Mr. Long's motion for new trial based on this issue, it did so utilizing the wrong test.

# TABLE OF CONTENTS

**PAGE(S)**

Certificate of Interested Persons . . . . . . . . . . . . . . . . . . . . . . . . .  ii

Statement Regarding Oral Argument . . . . . . . . . . . . . . . . . . . . . . iii

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  vi

Statement of Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Issue on Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

> When the government knew–yet failed to disclose–that its informant had falsely implicated an unrelated defendant as the seller in two different drug transactions and that informant was the sole person who identified defendant Derrick Long as the seller in the substantive count of this indictment, is Mr. Long entitled to a new trial on both the substantive drug and conspiracy counts under *Brady*?. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

> The Alleged Criminal Offenses . . . . . . . . . . . . . . . . . . . . . .  3

> Charges and District Court Proceedings . . . . . . . . . . . . . .5

Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Mr. Long is entitled to a new trial because the government suppressed evidence that its informant twice falsely implicated a defendant in a different case prosecuted by the same AUSA and investigated by the same detective . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

A.    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . 14

B.    Law and Argument . . . . . . . . . . . . . . . . . . . . . . . . . 14

    1.    The district court erred because it utilized the wrong test to decide Long's motion . . . . . . . . 14

    2.    This Court must apply the correct test utilizing *de novo* review . . . . . . . . . . . . . . . . . . . . . . . . 17

        a.    The evidence was suppressed . . . . . . . . 17

        b.    The suppressed evidence was favorable to Long . . . . . . . . . . . . . . . . . . . . . . . . . . 19

        c.    The suppressed evidence was material . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

    3.    Mr. Long should receive a new trial as to both counts of the indictment. . . . . . . . . . . . . . . . 25

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

**TABLE OF AUTHORITIES**

**PAGE(S)**

**FEDERAL CASES:**

*Avila v. Quarterman,* 560 F.3d 299 (5th Cir. 2009) . . . . . . . . . 19

*Brady v. Maryland,* 373 U.S. 83 (1963) . . . . . . . . . . . . . . *passim*

*Floyd v. Vannoy,* 894 F.3d 143 (5th Cir. 2018) . . . . . . . . . . 19, 21

*Giglio v. United States,* 405 U.S. 150 (1972) . . . . . iii, 6-8, 15-16

*Kyles v. Whitley,* 514 U.S. 419 (1995) . . . . . . . . . 16-17, 19, 22, 24

*Strickler v. Greene,* 527 U.S. 263 (1999) . . . . . . . . . . . 19-20, 24

*United States v. Bagley,* 473 U.S. 667 (1985) . . . . . . . . . . . . . . 15

*United States v. Bolton,* 908 F.3d 75 (5th Cir. 2018) . . . . . . . . 25

*United States v. Chapman,* 851 F.3d 363 (5th Cir. 2017) . . . . . 14

*United States v. Dvorin,* 817 F.3d 438 (5th Cir. 2016) . . . . . . . 15

*United States v. Ornelas-Rodriguez,* 12 F.3d 1339 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*United States v. Perry,* 35 F.4th 293 (5th Cir. 2022) . . . 14, 16, 23

*United States v. Runyon,* 290 F.3d 223 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-16, 21-22

*United States v. Severns,* 559 F.3d 274 (5th Cir. 2009) . . . . . . 16

*United States v. Sipe,* 388 F.3d 471 (5th Cir. 2004) . . . . . 23-24

*United States v. Wall,* 389 F.3d 457 (5th Cir. 2004) . . . 14-15, 17

**STATE CASES:**

*Berry v. Georgia,* 10 Ga. 511 (1851) . . . . . . . . . . . . . . 8, 11, 15, 21

**FEDERAL STATUTES:**

18 U.S.C. § 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

18 U.S.C. § 3231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 3742 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

21 U.S.C. § 841 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7

21 U.S.C. § 846 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**FEDERAL RULES**

FED.R.CRIM.P. 33 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**FIFTH CIRCUIT RULES**

5th Cir. R. 28.2.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

## STATEMENT OF JURISDICTION

This is a direct appeal from a final judgment in a criminal case. The district court had subject matter jurisdiction. 18 U.S.C. § 3231. Judgment was entered April 14, 2025.[1] A timely notice of appeal was filed on April 18, 2025.[2] This Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

---

[1]ROA.15.

[2]ROA.163.

## ISSUE ON APPEAL

When the government knew–yet failed to disclose–that its informant had falsely implicated an unrelated defendant as the seller in two different drug transactions and that informant was the sole person who identified defendant Derrick Long as the seller in the substantive count of this indictment, is Mr. Long entitled to a new trial on both the substantive drug and conspiracy counts under *Brady*?

## STATEMENT OF THE CASE

### The Alleged Criminal Offenses

The Government's case was investigated by DEA Special Agent (SA) Andrew Laiche and Metro Narcotics Detective Anthony Cowan.[3] It focused on five drug deals, all of which occurred in 2023 at codefendant James Ard's residence in Monroe, Louisiana.[4] In four of the five transactions, the government utilized a confidential informant named Jerome White to purchase methamphetamine.[5] Three of these four purchases were exclusively between Ard and White.[6]

The sole purchase by White that allegedly was not directly from Ard occurred February 27, 2023. On that day, the government contended White purchased methamphetamine from appellant Derrick Long. White initially attempted to purchase the drug from Ard, but, according to what White told

---

[3]ROA.193, 335-36.

[4]ROA.197.

[5]ROA.195-96, 199-200, 203, 207, 215, 290, 294, 296, 302, 341-42.

[6]ROA. 200, 203-04, 215-16, 290-91, 294-95, 302-03, 355-56, 593-96.

agents, Ard instructed him to call Mr. Long.[7, 8] Unable to reach

Long, White called Ard back.[9] Ard told White to go to Ard's

house.[10] Mr. Long was present at the residence, but so were

others.[11]

White returned to his handlers with approximately 44

grams of methamphetamine, claiming he bought it from Long.[12]

Although White was "equipped with an audio device,"[13] there is

no audio or video recording of the actual drug sale. There is

only an eight-second unintelligible video and a screenshot from

that video that establishes nothing beyond Mr. Long's presence

in the house.[14] There was also no evidence of value gleaned

---

[7]This alleged call occurred outside the presence of law enforcement. ROA.346.

[8]ROA.207-08, 296, 346.

[9]ROA.208, 296.

[10]ROA.208, 296.

[11]ROA.297.

[12]ROA.212, 297-99.

[13]ROA.209

[14]ROA.214; Exhibits 16-001, 16-002.

from the pole camera law enforcement installed outside Mr. Ard's residence.[15] White stole some of the buy money.[16]

Several months later, White was tasked with purchasing eight ounces of methamphetamine from Ard, yet he returned with only seven.[17] Agents did a "full strip search" and found the missing ounce secreted in White's underwear.[18] He had also stolen $200 of the buy money.[19] White was arrested, but the charges were ultimately dismissed.[20]

**Charges and District Court Proceedings**

Mr. Long was initially charged in a superseding indictment returned December 7, 2023. ROA.18. The indictment was signed by Assistant United States Attorney (AUSA) John Aaron Crawford. ROA.22. At the January 31, 2024, arraignment, the court reminded the government,

---

[15]ROA.357.

[16]ROA.347.

[17]ROA.216-27, 591-92.

[18]ROA.217.

[19]ROA.308.

[20]ROA.217-18, 280.

through AUSA Crawford, of its *Brady*[21] and *Giglio*[22] obligations and admonished the government that its failure to comply could "result in serious consequences, including (1) invalidating any subsequent conviction, and (2) severe disciplinary action against the responsible AUSA."[23] In a separate written order, the court reminded the government that its failure to comply with *Brady* and its progeny could lead to "exclusion of evidence, adverse jury instructions, dismissal of charges, contempt proceedings, or sanctions by the Court."[24]

Mr. Long was later charged in, and ultimately tried on, two counts of a six-defendant, five-count, second-superseding indictment.[25] Count 1 charged him with conspiring to distribute and possess with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) and 846; Count 2, with distributing five grams or

---

[21]*Brady v. Maryland*, 373 U.S. 83 (1963).

[22]*Giglio v. United States*, 405 U.S. 150 (1972).

[23]ROA.30.

[24]ROA.32.

[25]ROA.39-40.

more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii) and 18 U.S.C. § 2.[26] AUSA Crawford again signed the indictment on behalf of the United States Attorney.[27]

AUSA Crawford also represented the government at Mr. Long's rearraignment on this latest indictment.[28] During the proceeding, the court again reminded the government of its *Brady* and *Giglio* obligations and the potential ramifications of a failure to comply.[29] It also referenced its previously entered written order on the subject.[30]

Mr. Long was convicted November 13, 2024, after a two-day trial.[31] Nineteen days later, the government notified Long that White "had made materially false representations in

---

[26]ROA.39-40.

[27]ROA.42.

[28]ROA.44.

[29]ROA.44-45.

[30]ROA.32, 44.

[31]ROA.106-07, 170.

another federal case, United States v. Kylan Manning ..."[32] Specifically, White claimed he purchased narcotics from Manning on two separate occasions when Manning was demonstrably out of the country on a cruise.[33]

Long moved for a new trial based on this newly disclosed evidence.[34, 35] He also requested a hearing "to determine the circumstances under which White's credibility issues became known and whether this information was properly handled by the Government and investigating agents."[36]

In its opposition to Long's motion, the government said that SA Laiche had not learned that White falsely implicated Manning until after Long's trial.[37] But the government failed to disclose that the information had been known to the United

---

[32]ROA.131.

[33]ROA.131-32, 137.

[34]In his motion, Long relied on the five-step *Berry* rule, *infra* at fn. 60, but cited *Giglio*. ROA.138-40.

[35]ROA.136-42.

[36]ROA.141.

[37]ROA.150.

States Attorney and Det. Cowan for well over a year before Long was convicted.[38]

Cowan worked both the Manning and Long cases, and he signed White up as a confidential informant.[39] By August 29, 2023, as disclosed in open court in the Manning case by AUSA Tenille Gilreath, the United States Attorney and Det. Cowan knew White had falsely implicated Manning in two of four alleged drug sales.[40, 41]

---

[38]Official Transcript of Proceedings – Detention Hearing (Second Detention Hearing) at 1, 4, *United States v. Manning*, 3:23-CR-00070-01 (W.D. La. Oct. 23, 2023), ECF 36; ROA.150, 335.

[39]Reporter's Official Transcript of Motion to Suppress Hearing (MTS Hearing) at 3-4, *Manning*, ECF 60; ROA.282-83, 336-40, 597-601.

[40]At the hearing on that date, AUSA Gilreath revealed

> [O]n the search warrant there was [*sic*] four deliveries that were made, and they were all said in the search warrant that it was by Mr. Manning. But [Det. Cowan] determined that two of those could not have been Mr. Manning because Mr. Manning was on a cruise during those times.

Second Detention Hearing at 4, *Manning*, ECF 36. White was the confidential informant in each of the four transactions. Second Detention Hearing at 8, *Manning*, ECF 36; ROA.137, 149.

[41]Second Detention Hearing at 1, 4, *Manning*, ECF 36.

9

Long was indicted about three months later and arraigned January 31, 2024.[42] As previously noted, the government was represented by AUSA Crawford at this proceeding.[43]

On this same day, AUSA Crawford also represented the government at a hearing on Manning's motion to suppress.[44] In this proceeding, Det. Cowan testified to what AUSA Gilreath had admitted months earlier–two of the drug purchases by White could not have been from Manning because Manning was out of the country on a Carnival cruise.[45] Yet Cowan defended White's reliability because he had cooperated in "other federal court cases too."[46]

Long was one of these "other federal court cases," yet this information was suppressed until after his conviction.[47] The disclosure to Long occurred 462 days after AUSA Gilreath's

---

[42]ROA.30.

[43]ROA.22, 30, 106-07, 156.

[44]MTS Hearing at 2, *Manning*, ECF 60.

[45]MTS Hearing at 7, 21-23, *Manning*, ECF 60.

[46]MTS Hearing at 18, *Manning*, ECF 60.

[47]ROA.106-07, 131, 149.

initial disclosure in Manning and 306 days after Manning's suppression hearing–a hearing where the government was represented by AUSA Crawford and the relevant testimony was from Det. Cowan.

The district court denied Mr. Long's motion for new trial without a hearing.[48] Despite the Manning and Long cases both being investigated by Det. Cowan and prosecuted by AUSA Crawford,[49] the district court accepted that the government "was unaware of White's involvement in the Manning case."[50] It then analyzed Long's request for a new trial under the five-factor *Berry* rule, *infra* at fn. 60.[51] The court found that the evidence was unknown to Long, his failure to discover it was not a result of a lack of diligence, and the withheld evidence was material.[52] But it also found the evidence was useful only for

---

[48]ROA.151.

[49]AUSA Crawford enrolled as lead counsel in Manning on March 22, 2024. Motion to Substitute Counsel of Record at 1, *Manning*, ECF 61; Order, *Manning*, ECF 62.

[50]ROA.152.

[51]ROA.152.

[52]ROA.152.

11

impeachment as it did "not relate to any element of any offense against Long,"[53] the eight-second video and resulting screenshot "showed Long distributing the methamphetamine to White,"[54] and substantial evidence, including pole camera video and testimony of Ard and Wright,[55] established "Long's involvement in the drug conspiracy."[56]

Mr. Long was sentenced to 235 months of imprisonment on each count, such sentences to run concurrently.[57] Judgment was entered April 14, 2025.[58] A timely notice of appeal was filed four days later.[59]

---

[53]ROA.153.

[54]ROA.154.

[55]Brandon Wright was a codefendant who was only implicated in one drug purchase, the only one that did not involve White. ROA.39, 349-51.

[56]ROA.154.

[57]ROA.156, 158, 435.

[58]ROA.15.

[59]ROA.163.

## SUMMARY OF THE ARGUMENT

The government's confidential informant, and the only individual who directly implicated Mr. Long as the seller in Count 2, the substantive count, falsely implicated an unrelated defendant as the seller in two different drug transactions. The government possessed this information for months before Mr. Long was indicted and for more than a year before he was tried and convicted. Yet the government suppressed this information until 19 days after Mr. Long's conviction.

When the District Court judge analyzed Mr. Long's motion for a new trial, it did so utilizing the wrong test. Under *Brady*, the correct test, Mr. Long is entitled to a new trial because the withheld evidence was (1) clearly suppressed, (2) favorable to him, and (3) material, *i.e.*, the verdict returned against him is not worthy of confidence.

13

## ARGUMENT

**Mr. Long is entitled to a new trial because the government suppressed evidence that its informant twice falsely implicated a defendant in a different case prosecuted by the same AUSA and investigated by the same detective**

### A.  Standard of Review

The district court's denial of a motion for new trial is reviewed for abuse of discretion, *United States v. Chapman*, 851 F.3d 363, 380 (5th Cir. 2017), but "[q]uestions of law are reviewed *de novo*." *United States v. Wall*, 389 F.3d 457, 465 (5th Cir. 2004) (citation omitted). The denial of a motion for new trial based on an alleged *Brady* violation is reviewed *de novo. United States v. Perry*, 35 F.4th 293, 345 (5th Cir. 2022).

### B.  Law and Argument

A new trial motion can be granted "if the interest of justice so requires." FED.R.CRIM.P. 33(a).

    **1.  The district court erred because it utilized the wrong test to decide Long's motion**

The district court employed the five-prong *Berry* rule[60] to decide Long's motion for new trial.[61] It should have instead utilized *Brady*.

*Berry* applies generally to motions involving newly discovered evidence.[62] *Wall*, 389 F.3d at 467; *United States v. Runyon*, 290 F.3d 223, 246 (5th Cir. 2002). But when a new-trial motion "based on newly-discovered evidence raises a *Brady* claim, this [C]ourt instead applies the three-prong *Brady* test to determine whether a new trial is appropriate."[63]

---

[60]Under *Berry*, a defendant must show

(1) the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) the failure to detect the evidence was not due to a lack of diligence by the defendant; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence if introduced at a new trial would probably produce an acquittal.

*Wall*, 389 F.3d at 467 (citation omitted).

[61]The government and Mr. Long also utilized the wrong test in their pleadings. ROA.138, 145.

[62]ROA.152.

[63]While the government's failure to disclose White's false identifications of Manning is technically a *Giglio* violation, impeachment evidence is encompassed by *Brady*. *United States v. Bagley*, 473 U.S. 667, 677 (1985) (citation omitted). *See also United States v. Dvorin*, 817 F.3d 438, 450 (5th Cir. 2016) ("*Brady* prohibits the prosecution from suppressing evidence favorable to the defendant where the evidence is

15

*Runyan*, 290 F.3d at 247 (citations omitted). *See also Perry*, 35 F.4th at 345; *United States v. Severns*, 559 F.3d 274, 278 (5th Cir. 2009).

To establish a *Brady* violation,"a defendant must show that (1) evidence was suppressed; (2) the suppressed evidence was favorable to the defense; and (3) the suppressed evidence was material to either guilt or punishment...." *Runyan*, 290 F.3d at 247 (citation omitted). "Materiality" in this context means "there is a 'reasonable probability' that the outcome of the trial would have been different if the suppressed evidence had been disclosed ..." *Id.* "A reasonable probability of a different result is ... shown when the government's evidentiary suppression undermines confidence in the outcome of the trial." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (citation and internal quotation marks omitted). Thus, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its

material either to guilt or to punishment, ... and *Giglio* applies *Brady* to evidence affecting the credibility of key government witnesses ..." (citations and internal quotation marks omitted).

16

absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id.*

### 2. This Court must apply the correct test utilizing *de novo* review

Because the district court erred as a matter of law by applying the wrong test, this Court should review its decision *de novo* utilizing the proper one. *Wall*, 389 F.3d at 469.

### a. The evidence was suppressed

As to the first *Brady* factor, there is no question the evidence was suppressed. While the district court accepted that the government did not know of White's false claims in the Manning case,[64] the information was indisputably known by both by Det. Cowan and the United States Attorney well before Mr. Long's trial.

Cowan worked both the Manning and Long cases.[65] He knew no later than August 29, 2023, or 443 days before Long's trial, that White had twice falsely implicated Manning.[66] The

---

[64]ROA.152.

[65]MTS Hearing at 6, *Manning*, ECF 27; ROA.336-40, 597-601.

[66]Second Detention Hearing at 4, *Manning*, ECF 36.

17

fact was announced in open court by AUSA Gilreath at Manning's detention hearing, and she attributed the discovery to Det. Cowan's "due diligence."[67]

Mr. Long was indicted later that year.[68] Less than two months after that, AUSA Crawford, Long's prosecutor, appeared in the Manning case and heard testimony from Cowan that White had falsely implicated Manning in two of four alleged drug sales.[69] Yet Det. Cowan insisted White was "reliable" because, among other things, "he's provided us with substantial information that has led to seizures and actually other federal court cases too."[70] Long's trial was 287 days or more than 9 months later.

A generous-to-AUSA-Crawford explanation of his lack of disclosure to Mr. Long once hearing Cowan's testimony at the Manning detention hearing is that he did not know the identity of Cowan's informant and, despite the fact that he had, *at that*

---

[67]Second Detention Hearing at 4, *Manning*, ECF 36.

[68]ROA.18.

[69]MTS Hearing at 7, *Manning*, ECF 60; ROA.22.

[70]MTS Hearing at 18, Manning, ECF 60.

*very moment*, a case with Cowan involving an informant, failed to follow up with the detective. A less generous explanation is that AUSA Crawford knew the two cases involved the same informant and willfully or through gross negligence failed to disclose this information to Mr. Long. Ultimately, it does not matter because Cowan's knowledge is imputed to the government. *Avila v. Quarterman*, 560 F.3d 299, 307 (5th Cir. 2009). *See also Strickler v. Greene*, 527 U.S. 263, 280-81 (1999) (stating that *Brady* "encompasses evidence 'known only to police investigators and not to the prosecutor'"), *citing Kyles*, 514 U.S. at 437. The evidence was thus clearly suppressed.

### b.    The suppressed evidence was favorable to Long

"Under clearly-established Supreme Court precedent, evidence that could have been used to impeach a witness's testimony is favorable." *Floyd v. Vannoy*, 894 F.3d 143, 165 (5th Cir. 2018) (citation omitted). *See also Strickler*, 527 U.S. at 281-82 ("The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is

impeaching …"). As this suppressed evidence could have been utilized to impeach White, it was favorable to Long.

In *Strickler,* an eyewitness testified that she witnessed a terrifying carjacking. 527 U.S. at 271-72. Yet before trial, this witness had described "a trivial episode of college kids carrying on" that her 14-year-old daughter failed to even notice. *Id.* at 274-75. The Supreme Court found this suppressed evidence was "unquestionably" favorable to the defendant because it could have been used to impeach the eyewitness. *Id.* at 282.

The impeachment value of the suppressed evidence relating to White was at least as significant. Impeachment of witnesses, especially White, was the main focus of Mr. Long's defense. While Long was able to impeach White with evidence that he was a multi-convicted felon who had stolen drugs and buy money, evidence that White falsely implicated someone else–not once, but twice (and two out of four transactions, *i.e.,* 50% of the time)–would have put White's testimony in an entirely different light. Its suppression deprived Mr. Long of the evidence he needed to argue that he too had been falsely

incriminated by White. Because this suppressed evidence would have strengthened Mr. Long's defense, it constitutes "favorable evidence under *Brady*." *Floyd*, 894 F.3d at 163. Mr. Long has satisfied the second of the *Brady* factors.

### c.    The suppressed evidence was material

The third *Brady* factor, materiality, has already been found by the district court, albeit utilizing *Berry* instead of *Brady*.[71] It is also material under *Brady*.

Suppressed evidence is material for *Brady* purposes "when there is a 'reasonable probability' that the outcome of the trial would have been different if the evidence had been disclosed to the defendant." *Runyon*, 290 F.3d at 247 (citation omitted). A 'reasonable probability' exists "when the failure to disclose the suppressed evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.* (citation and internal quotation marks omitted).

---

[71] ROA.152.

To prevail, Mr. Long is not required to prove that "he would have been acquitted had the evidence been disclosed." *Id.* (citation omitted). Instead, he must show that the government's suppression of evidence "undermines confidence in the outcome of the trial." *Kyles*, 514 U.S. at 434 (citation and internal quotation marks omitted).

The only direct evidence that Mr. Long sold drugs to White on February 27th was White's testimony. SA Laiche and Det. Cowan could say that White left them with buy money and returned with drugs after going to Ard's residence. They could not independently confirm that White actually bought from Long. The recording device White was wearing did not record anything of substance, as it also did not on either of the two occasions where White falsely implicated Manning as the seller.[72] Exhibit 16, the eight second video, is unintelligible and shows nothing but Long's face. It did not show a sale or money

---

[72]MTS Hearing at 23-24, 40, *Manning*, ECF 60; Report and Recommendation at 13, *Manning*, ECF 70; ROA.213, 299-300; Exhibit 16-001.

or drugs. And Long was not the only person at the residence that day.[73]

Impeaching White was thus critical to Long's case, and impeachment evidence can be material even when the witness has "already been impeached on other grounds." *Perry*, 35 F.3d at 346 (citation omitted). That is especially true when, as here, the suppressed impeachment evidence "seriously undermine[s] the testimony of a key witness on an essential issue or [when] there is no strong corroboration ..." *United States v. Sipe*, 388 F.3d 471, 478 (5th Cir. 2004).

The "essential issue" here is the identity of the person who sold methamphetamine to White. The suppressed impeachment evidence would have allowed Long to show White to be a liar with a track record of falsely implicating the alleged seller in drug deals that White conducted as a government informant—alleged sellers such as Long. Had Long been aware of and able to use this evidence at his trial, it would have "changed the tenor" of White's testimony. *Perry*, 35 F.4th at

---

[73]ROA.297.

346 (citations omitted; cleaned up). This would have been much more effective impeachment than simply showing White to be a multi-convicted felon who stole.

Materiality under *Brady* is not determined by simply judging the sufficiency of the evidence that remains "after discounting the inculpatory evidence in light of the undisclosed evidence … Rather, the question is whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Strickler*, 527 U.S. at 290 (citations and internal quotation marks omitted).

The question is thus whether Mr. Long "received a fair trial, understood as a trial resulting in a verdict worthy of confidence," in the absence of the suppressed evidence. *Kyles*, 514 U.S. at 434. He did not. In the absence of the withheld evidence and the way it would have strengthened his defense and impeached White, the verdict Mr. Long received is not worthy of confidence. *See Sipe*, 388 F.3d at 489-90 (finding that evidence of undisclosed benefits aliens received while they

24

remained in the country to testify against a federal agent changed the tenor of their testimony and were not merely cumulative of other impeachment evidence, especially because the testimony of the aliens was "the heart of the government's case"). Mr. Long has satisfied the third and final *Brady* prong.

### 3. Mr. Long should receive a new trial as to both counts of the indictment.

As "the usual remedy for a *Brady* violation is a new trial …," *United States v. Bolton*, 908 F.3d 75, 91 (5th Cir. 2018) (citation omitted), Mr. Long should be granted a new trial as to both counts of the indictment. Count 2, the substantive count, was the tent pole that held up the conspiracy count as evidenced by the government's closing.

Other than the alleged sale to White, when arguing Count 1, the government focused on Long being "there,"[74] "around,"[75]

---

[74]ROA.377-78, 391.

[75]ROA.379.

"not far from,"[76] "there during that time,"[77] "often there,"[78] "there sometimes for extended periods of time,"[79] "always at the house,"[80] "in and out,"[81] and  "always there."[82] But "placing a defendant in a climate of activity that reeks of something foul is not enough to support a conspiracy conviction." *United States v. Ornelas-Rodriguez*, 12 F.3d 1339, 1345 (5th Cir. 1994) (citation and internal quotation marks omitted).

Other evidence relied on by the government to establish a methamphetamine conspiracy came from the wiretap. But as to Mr. Long, it showed only that he was a marijuana user[83] and that, at Ard's request, he tendered a black bag containing $100 worth of marijuana  to a man named Migo.[84] Migo ultimately

---

[76]ROA.377.

[77]ROA.377.

[78]ROA.378.

[79]ROA.378.

[80]ROA.390.

[81]ROA.391.

[82]ROA.390.

[83]Exhibit 4.

[84]ROA.252; Exhibit 1.

did not take the bag because, as Migo told Ard (not Long), he wanted "ice and coca."[85]

## CONCLUSION

The interests of justice require that Mr. Long be granted a new trial. The government obviously and blatantly suppressed evidence that he could have used to bolster his defense and eviscerate the chief witness against him through cross examination. The verdict Mr. Long's jury returned is not "worthy of confidence" in light of this withheld evidence.

s/C. Mignonne Griffing
Counsel for Derrick Long
116 Londonderry Square
Lafayette, LA 70508
CMGriffing_Law@icloud.com

---

[85]Exhibits 1 and 2.

27

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limit of <u>Fed. R. App. P. 32(a)(7)(B)</u> because, excluding the parts of the document exempted by <u>Fed. R. App. P. 32(f)</u> and <u>5th Cir. R. 32.1</u>, this document contains 4,121 words.

2.      This document complies with the typeface requirements of <u>Fed. R. App. P. 32(a)(5)</u>, and <u>5th Cir. R. 32.1</u> and the type-style requirements of <u>Fed. R. App. P. 32(a)(6)</u> because this document has been prepared in a proportionally spaced typeface using WordPerfect 2021 in 14 point Georgia.

s/C. Mignonne Griffing
Counsel for Derrick Long